HONORABLE JUDGE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBEL KELATA GOITOM<br>Defendant | Case No.: CR17-132 JCC<br><br>SENTENCING MEMORANDUM<br><br>Hearing:  March 1, 2022 |

## I.    INTRODUCTION

Robel Goitom, through counsel, J. Talitha Hazelton, Smith Law LLC, will admit to a pending probation violation on March 1, 2022, before the Honorable Judge Coughenour.

He asks this Court to sentence him in accordance with Probation's recommendation, for the reasons detailed below.

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

## II. ARGUMENT

**A. Co-occurring disorders require co-occurring treatment.**

In 2017, at the age of 28, Mr. Goitom suffered a traumatic brain injury after he was severely assaulted by a group of men who attempted to steal money from him. Mr. Goitom truly believed he was going to die during the assault after these men pistol whipped him several times, zip tied him up in a motel room, dragged him to the bathtub, and held a gun to his head. Since the assault, Mr. Goitom began experiencing symptoms related to PTSD.

Shortly after the assault in 2017, Mr. Goitom was arrested on federal charges and spent the next two years of his life incarcerated in federal custody. Unfortunately, being incarcerated only exacerbated Mr. Goitom's PTSD symptoms and anxiety. These symptoms continued even after his release with Mr. Goitom feeling more on edge and distrustful around people. To deal with his PTSD and anxiety, Mr. Goitom turned back to alcohol as his only coping mechanism.

In 2018 the PSR noted that Mr. Goitom had been diagnosed with and was taking medication to manage his PTSD. Dkt. 45, ¶ 67.  But Mr. Goitom has never had therapeutic intervention to treat his PTSD, or substance use disorder treatment that is informed by his PTSD diagnosis.

Dr. Marnee Milner, a neuropsychologist, evaluated Mr. Goitom in 2021 and diagnosed him with PTSD and Alcohol Use Disorder. Exhibit 1. Dr. Milner

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

recommended that Mr. Goitom receive "empirically-based, trauma-based cognitive behavioral treatment" to treat his mental health diagnosis. She further noted in her report that "Mr. Goitom has the cognitive ability and willingness to engage in such treatment, which would also be able to address dysfunctional alcohol use and provide techniques or coping skills for adaptive behaviors." Exhibit 1.

The dual diagnoses of PTSD and substance use disorder are best treated simultaneously and with attention to co-occurring phenomenon. In that way, as Dr. Milner notes, Mr. Goitom can address his substance use in the context of his maladaptive response to PTSD symptoms.  Thus, it allows Mr. Goitom to gain insight into why and how he is triggered, how to respond, and how to alleviate the ever-present feeling of vigilance without numbing with alcohol consumption but with healthy adaptive mechanisms.

**B. Where the current treatment plan addresses co-occurring needs, and where Mr. Goitom is committed to treatment, continued supervision in the community is appropriate.**

Mr. Goitom has transitioned into the community gradually: first, multiple years in a county jail for the nightclub incident, then, in-patient treatment, finally, on electronic monitoring. Now, Mr. Goitom is poised with intensive treatment support developed with a keen eye to what was deficient from prior treatment modules and what kind of specific support and supplemental treatment Mr. Goitom, given his specific trauma history, require.

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

Mr. Goitom was successfully discharged from in-patient treatment. In his patient discharge summary dated February 11, 2022, the counselor noted:

> Client has engaged in educational groups and individuals with counselor. Client is recommended to continue to seek and follow through with aftercare plan of mental health, primary care doctor and intensive outpatient. Client has made progress in identifying and working on changing his thinking patterns and the ability to make healthier choices. Client further it benefit from education on the disease of addiction and the connection between his alcohol use and negative consequences. Robel has also been facilitating the morning reflection, AA/NA meetings and the gratitude meeting on his living unit with other clients. Client even shared that he did not react to another client physically provoking him, where in the past he would have retaliated. Showing a change and growth in his recovery.

Now, Mr. Goitom is engaged in co-occurring intensive outpatient treatment through Evergreen Recovery Center. (Exhibit 2)

Mr. Goitom also has an appointment on March 7 for an initial assessment with SeaMar Behavioral Health Clinic, specifically for targeted mental health treatment and support.

Thus, Mr. Goitom is poised to address not only his substance use and engage sobriety, but also supplement his mental health treatment by adding critical counseling and cognitive therapy rather than simple medication for the disorder. In this way, Mr. Goitom will work to further appreciate the interrelation between

In his own words, when asked by counsel to self-describe his relationship with alcohol, Mr. Goitom responded:

> "Alcohol has played a negative role in my life by causing me to have internal family problems between my parents and my younger sibling. I can honestly say because of my alcohol use and legal troubles that follow suit has led to a strain on my parents' marriage and the relationship I have with my younger brother. The trials and tribulations I

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

have went through in life due to alcohol have given my younger brother an outlook that I am not a positive role model to look up to and in return causes us not to have any type of bond or a relationship with each other. I have also noticed that my alcohol use attracted people in my social life that do not have my best interest at heart and puts me in environments and situations that are detrimental to the success of my future. I have also lost career opportunities, jobs, and the holding a driver's license because of my alcohol use. All in all, alcohol is slowly but surely striping me of my well being and any integrity I have with my family."

For Mr. Goitom, his family and communal connections are integral parts of his recovery. Where treatment embraces and supports these culturally relevant motivators for Mr. Goitom, a Black man from an East African immigrant family, his treatment is all the more likely to succeed.[1]

### C. Underlying conduct of violation

Mr. Goitom committed a criminal law violation and violated this Court's order when he carried a firearm while at a nightclub.  Mr. Goitom has taken responsibility for his actions that night. He knows he should not have had a gun with him and should have not brought it with him to a public place.

---

[1] *See generally* Substance Abuse and Mental Health Services Administration. Improving Cultural Competence. Treatment Improvement Protocol (TIP) Series No. 59. HHS Publication No. (SMA) 14-4849. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2014, pages 101-116, available at: https://store.samhsa.gov/sites/default/files/d7/priv/sma14-4849.pdf.

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

Mr. Goitom was armed, and a confrontation did occur. But the details of that offense uncovered through discovery and defense investigation reveal a clearer picture that is more accurate than the limited snapshot of the initial police report. The facts also underscore that Mr. Goitom's mental health and alcohol use directly contributed to the conduct.

Employees of the Saravejo nightclub in Belltown initially reported that Goitom was kicked out of the club and then went to his car in the parking lot, returned with a firearm, and threatened club staff, starting a fight.

The evidence instead revealed that Mr. Goitom went to the nightclub and was granted admission while armed.  Later, at the sentencing hearing in State court, one of the alleged victims, Mr. George, no longer employed by the nightclub, reported to the sentencing judge that the club allowed Mr. Goitom to enter the establishment while armed.

At the club, Mr. Goitom was extremely intoxicated and wearing a flashy diamond necklace. It was in this condition that a small interaction inside the club escalated. Mr. Goitom was confronted by a security guard for blocking a walkway. The security guard had pushed Mr. Goitom to clear the walkway. Mr. Goitom bristled. He told the security guard: "do not put your hands on me." Mr. Goitom was recalcitrant, but not aggressive.  The security guard pushed Goitom out of the side exit of the club. There were four men – employees of the club – congregated

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

1    near the side exit door. Goitom asked one of these men (Dino Slatina) why he was

2    getting kicked out, protesting his treatment. Slatina got aggressive as if Goitom was

3    trying to pick a physical fight. The other three men surrounded Goitom and began

4    to push him saying "you want to fight?"

5            From there, Mr. Slatina, the club owner, grabbed Mr. Goitom by the jacket as

6    the other security guard eventually pepper sprayed Mr. Goitom. The group of

7    employees grabbed the diamond pendant off Goitom's neck.  As the staff grabbed

8    his chain and pulled, Goitom reached for his pistol. Club employees reached for the

9    firearm and the gun discharged whilst being wrest from Mr. Goitom. The bullet

10   lodged into the wall.

11           The State reduced[2]  the originally filed charges and Robel Goitom admitted

12   guilt to three counts of felony harassment and one count of unlawful possession of

13   a firearm.

---

[2] Evidence presented to the State during negotiation included: (1) the height and
weight differentials between Goitom and the club owner at 6'5 and 220 lbs; (2)
body worn camera footage capturing a club employee asserting, peculiarly to
nobody any particular, the "pendant is gone"; (3) a police report from a year prior
wherein the club owner reported to SPD "the club has numerous security cameras
positioned through the nightclub which would have captured any disturbance in the
nightclub...[the] system retains the footage for two weeks before it is
overwritten.", calling into question the club owner's conclusory assertion that
surveillance footage was not available in this case; (4) body worn camera footage
of a neutral witness, a club patron, who reported that discharge of the gun occurred
*after* Goitom was on the ground; (5) a police report from 2012 where a club patron

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

Mr. Goitom has had time to reflect on his actions and what steps he can take to harness support and attend to his underlying and undertreated mental health diagnosis and his persistent substance use disorder. He is looking forward to engaging in treatment to learn better coping mechanisms to deal with his PTSD symptoms. Overdue, necessary, and difficult repair work await him. He has a community to support him doing that work, and a deeper insight into how he can meet himself where he is at to grow to be stronger, safer, and more secure in himself. A future awaits Mr. Goitom where his is not subject to the whims of mental health symptoms but has control and skills to manage these recurring symptoms. A future awaits where Mr. Goitom's substance use disorder and PTSD are footnotes to his life rather than driving the narrative.

### III. CONCLUSION

For the reasons detailed above, Mr. Goitom respectfully requests the Court impose the sentence recommend by US Probation.

---

reported that two members of Saravejo security staff dragged him to the sidewalk and kicked him for not following a security staff directive not to sit on a car in the parking lot; (6) body worn footage of club manager, a witness, confirming with officer that this was a "negligent discharge."; (7) body worn footage wherein the club owner admits he grabbed Goitom by his jacket; and (8) confirmation from DOL Security Guards Program that the security guard was not licensed.

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056

Respectfully submitted this 25TH day of February 2022.

SMITH LAW, LLC

By   */s/ J. Talitha Hazelton*

J. Talitha Hazelton | WSBA No. 52460

4301 NE 4th St.
PO BOX 2767
Renton, WA 98056
talitha@thesmithlaw.com
Tel: (206) 226-7447
Fax: (250) 900-2664

*Attorney for Robel Goitom*

THE SMITH LAW, LLC
4301 NE 4th Street
PO Box 2767
Renton, WA 98056